## Cas No. 7,033.

INGELS v. MAST.

[6 Fish. Pat. Cas. 415: [1] Merw. Pat. Inv. 450.]

Circuit Court, S. D. Ohio. May, 1873.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

Wood & Boyd, for complainant.
Fisher & Duncan, for defendant.

SWING, District Judge. This is a bill in equity, filed by the complainant to restrain the defendant from infringing letters patent, No. 90,268, dated May 18, 1869, and reissued letters patent, No. 3,976, dated May 17, 1870. The bill contains the usual allegations of infringement, and avers that Thomas & Mast were formerly partners in making and selling seed-drills, and that after the partnership was dissolved, the complainant settled with Thomas, giving him a release from all liability on account of such manufacture and sale.

To this bill the defendant files an answer, containing these grounds of defense: 1. That complainant's patents are void for want of novelty. 2. That the defendant does not infringe; and, 3. That the release given to Thomas operates as a release to the defendant.

In considering this case, we shall content ourselves with giving the conclusions to which we have arrived, without going through the various steps which lead to those conclusions.

The first question is, what has the complainant patented? In ascertaining this fact, certain important rules have been laid down as guides for us in this examination. The first is that the patent shall be liberally construed, so as, if possible, to uphold it. Davoll v. Brown [Case No. 3,662]; Parker v. Stiles [Id. 10,749]; Goodyear v. Central R. Co. [Id. 5,563]: Gibson v. Van Dresar [Id. 5,402]; [Turrill v. Michigan S. & N. I. R. Co.] 1 Wall. [68 U. S.] 510. Secondly. In the construction, the patent, specifications, and drawings are all to be taken together. Parker v. Stiles [supra]; [Hogg v. Emerson] 11 How. [52 U. S.] 606; Goodyear v. Central R. Co. [supra]; Gibson v. Van Dresar [supra]; Kittle v. Merriam [Case No. 7,857].

Taking these rules, following and applying them, let us consider what Ingels has invented. The first three claims of the reissue are: 1. In combination with the concaves or secondary hoppers, and a seeding-wheel turning therein, the projecting flanges or cheeks on the inner sides of said hoppers, and opposite the ends of the seed-wheel therein, substantially as described and represented. 2. Also, in combination with the secondary hoppers or seed-cups, the casting of the cheeks or flanges, on and with the concave hopper or cup, when it is cast, substantially as represented. 3. Also the combinations of the concave, j, inclined plate, j2, cheeks, j1, and feeding or seeding wheel, K, as and for the purposes described and represented.

[Drawing of Patent No. 90,268, published from the records of the U. S. Patent Office.]

So that we find complainant in his claims has a concave. a seeding-wheel turning therein, of a peculiar construction, and in combination with this the casting of the flanges or cheeks upon the inner side of the concave, in the manner described.

It is said, however, by defendant, that he has no particular form of seed-cup or hopper described. True, so far as the claim is concerned, there is none. But the reissue says the feed-box is to be formed in a particular manner, and the drawing shows the seed-cup, in concave form, with an elevated delivery, and the expert Dennis shows that, taking the specification, claims, and drawings together, he has had no difficulty in constructing the feed-box. It is said, moreover, that the fact that the seed-cup is constructed with the elevated delivery, in many ways changed the function to be performed.

In cases of this character, the testimony of experts is competent. and we are to be governed to a certain extent by them. In the present case, two have been placed upon the stand, one by complainant and one by defendant, and the testimony of Fulgham may be taken in the same connection. Their testimony establishes the fact that there are two classes of feed-cups—to wit, gravitating feed and forced feed. In the first, the seed is allowed to drop through the simple force of gravitation; in the second, there must be a wheel so constructed as to carry the grain around and up to the elevated orifice. This testimony shows further, that if that orifice is on a level, in going over rough ground, the grain may be easily thrown out in too large quantities; while if it is elevated, this can not occur. Dennis and Fulgham both recognize these two classes of feed-cups.

It is true that the specification and claims make no mention of the elevated delivery, but it is shown clearly in the drawings, and construing these in connection with the specification and claims, as they must be construed, we find that the complainant has the seed-cup, the elevated delivery, the wheel with extended cogs, and the cheeks.

It is said, however, that the complainant, in his specifications, describes the function to be performed by the cheeks or flanges as that of end-bearings for the wheels only. It is true that this is the only function described by him, and yet it is equally true,

according to the testimony, that they perform an additional function in holding the grain, and enlarging the feed-wheel, thus performing a positive function in the distribution of the seed, and I take it to be the established law, that an inventor is entitled to protection in all the functions which his invention may perform, whether claimed or not; or, in other words, that the claim will be extended, co-extensive with the improvement.

As to the shape of the hopper or seed-cup, it is described in the patent as a concave, and in the drawing it is clearly described as having an elevated discharge orifice, which gives it the distinguishing feature of a forced or compulsory feed-drill, as contra-distinguished from gravitating or agitated feed-drills.

The experts clearly recognize the division of grain-drills into these two classes. By the improvement of the elevated cogs, this makes complainant's combination consist of the concave or seed-cup of the particular form, with the flanges or cheeks, with the plate, and the seed-wheel with the elevated cogs.

Having thus ascertained in what the complainant's invention consists, let us ascertain whether it is void for the want of novelty, or whether it has been anticipated. That it has been anticipated in most, if not all its elements, we readily agree; but has it been anticipated in its combination of elements? Three machines or devices are put in evidence to anticipate the complainant's machine.

The first is the Jessup device, and I will say that this device has given us a great deal of trouble in deciding this case. To some extent, it does seem that these elements are combined here. We have the concave, with the seed-wheel turning therein, the cheeks and the elevated cogs projecting beyond the cheeks. But we have not in combination with these three the elevated discharge. The discharge in the Jessup device is on a level.

On the opposite side of the same device, and separated only by a thin plate, we have a wheel performing a similar function and with the elevated discharge. But we can not take this out of its place to make the four elements. It is said, however, that this is a mere duplication. If it were, whether the complainant would be entitled to a patent is not quite clear. But all the testimony shows that the Jessup cup that has the elevated delivery has only been used for a particular kind of grain, and has never been applied to all kinds.

Between the two parts of his seed-cup, Jessup had a slide, and this must be closed when used for certain kinds of grain. The invention of Ingels does away with this, makes a simple device, and enables it to discharge all different kinds of grain. But we place the decision upon the other ground,

that in the Jessup device there is wanting the elevated discharge.

The second is the Moore device. Although his device may have the cheeks or flanges and elevated cogs, yet it does not possess the elevated discharge orifice. In other words, its specifications and drawings bring it within the class of drills denominated as those whose seed is discharged by gravitation, and not by force or compulsion.

The Strayer device possesses the elevated discharge orifice, and comes within the class of forced or compulsory feed-drills, but it possesses neither the cheeks nor flanges, nor the wheel projecting-plate, j. Thus we find that the three devices relied upon in defense all lack a combination of the four elements that we find in the Ingels patent.

The next question is, does the defendant infringe? There are some minor differences, yet the defendant, without doubt, uses the device covered by complainant's patent, and therefore infringes. He uses the three elements, combined with the elevated discharge.

As to the question of release, we find in most, if not all the cases in which a release of one joint wrong-doer has been held to operate as a discharge of all, notwithstanding a stipulation or reservation to the contrary, have been technical releases under seal. Without, however, determining what might be the effect of such a release not under seal, with such a stipulation at law, we think, in equity, it should not be extended beyond the intent of the parties.

We hold, therefore, that simply as a combination of four elements, there is an infringement of complainant's patents. The elevated orifice is all. We have upheld the patents on that alone; otherwise, we should have discharged the suit.